UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

In re AGWAY, INC.,

                            Debtor.

--------------------------------

D. CLARK OGLE, Liquidating Trustee of the
Agway Liquidating Trust,

                            Appellant,

       -v-                               6:09-CV-1049

INTERNAL REVENUE SERVICE,

                            Appellee.

--------------------------------

APPEARANCES:                                 OF COUNSEL:

MENTER RUDIN & TRIVELPIECE, P.C.       JEFFREY A. DOVE, ESQ.
Attorneys for Appellant                         JAMES C. THOMAN, ESQ.
308 Maltbie Street, Suite 200
Syracuse, NY 13204-1498

UNITED STATES DEPARTMENT OF JUSTICE   KAREN WOZNIAK, ESQ.
   TAX DIVISION, Attorneys for Appellee
P.O. Box 55
Ben Franklin Station
Washington, DC 20044

HON. RICHARD S. HARTUNIAN             WILLIAM F. LARKIN, ESQ.
United States Attorney                          Assistant United States Attorney
Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, New York  13261

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On September 15, 2009, appellant D. Clark Ogle, the Liquidating Trustee (the "LT") of the Agway Liquidating Trust (the "Liquidating Trust"), filed a Notice of Appeal challenging the August 14, 2009, Memorandum-Decision, Findings of Fact, Conclusions of Law and Order of the Hon. Diane Davis, United States Bankruptcy Judge.  The LT designated the issues on appeal as follows:

> 1. Did the Bankruptcy Court err when it determined that it did not have jurisdiction under 11 U.S.C. § 505(a) to determine the tax liability of the estate arising from a post-confirmation transaction?
>
> 2. Did the Bankruptcy Court err when it determined that 11 U.S.C. § 505(a) does not provide a basis to render an opinion as to the estate's tax liability, because no actual controversy existed?[1]
>
> 3. Did the Bankruptcy Court err when it determined that it lacked jurisdiction to make a finding under 11 U.S.C. § 505(b)?

Not. of Appeal (Doc. No. 1).  Appellee Internal Revenue Service ("IRS") did not cross-appeal.[2]  The appeal was taken on submission without oral argument.

## II. BACKGROUND

On October 1, 2002, Agway, Inc. ("Agway") and various of its wholly-owned subsidiaries (collectively "debtors") filed for bankruptcy protection pursuant to Chapter 11.

---

[1] This is somewhat a misstatement of the Bankruptcy Court's holding.  The Bankruptcy Court found that the potential tax liability did not exist when the Petition was filed nor when the original Liquidating Plan was confirmed (that is, it arose post-confirmation).  The Bankruptcy Court extrapolated these facts to conclude that no actual controversy existed when the Petition was filed or when the Liquidating Plan was originally confirmed, as if it was required to consider whether the controversy existed at either of those times in order to have jurisdiction to make a determination at the time the LT filed the motion.

[2] Because the IRS did not cross-appeal, its arguments regarding case or controversy, lack of controversy under 28 U.S.C. § 2201, and exceeding the government's waiver of sovereign immunity, which had previously been determined by the Bankruptcy Court, were not preserved for appeal and need not be addressed.

- 2 -

The bankruptcy cases were jointly administered. Debtors' Plan of Liquidation ("Liquidating Plan") was confirmed on April 28, 2004, to be effective May 1, 2004. The Liquidating Plan provided for establishment of the Liquidating Trust, and all of the bankruptcy estate's assets were transferred to the Liquidating Trust. The Liquidating Plan further provided for appointment of a liquidating trustee who would oversee liquidation of the Liquidating Trust assets and distribution to creditors pursuant to its terms. As noted above, D. Clark Ogle was appointed LT.

The Plan provided that the "Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust . . . under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through dissolution of the Liquidating Trust." Plan § 7.01(f).[3] In addition, the Liquidating Plan provided that the Bankruptcy Court retained jurisdiction as to all matters until the cases were closed, including

> (q) Hear and determine matters under sections 346, 505 and 1146 of the Bankruptcy Code with respect to any tax, fine, penalty or addition to tax, including determinations regarding any tax liability arising in connection with the liquidation of assets of the estates pursuant to the Plan (including any request for expedited determination pursuant to section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to the returns for any and all taxable periods ending after the Petition Date through the closing of the Chapter 11 Cases, and, with respect to the Liquidating Trust, for all taxable periods throughout the termination of the Liquidating Trust).

Plan Art. XIII(q). Under the Liquidating Plan, the entire bankruptcy estate was to be liquidated through the Liquidating Trust, and, upon complete liquidation of the estate the Liquidating Trust would be dissolved.

---

[3] Bankr. Case No. 02-65872 (lead case) through 02-65877, jointly administered, Doc. No. 5035.

Although the debtors' Retirement Plan was not part of the Liquidating Trust, the Plan named the LT as administrator of the Retirement Plan. According to the terms of the Liquidating Plan, the Retirement Plan was to be terminated effective May 31, 2004. However, a strategy was devised to preserve the Retirement Plan, the specific terms of which are unimportant here. Broad terms of the strategy are sufficient to set the stage: sponsorship of the Retirement Plan was to be transferred to an Agway subsidiary, which would in turn transfer its shares to an independent company allowing for the continuation of the Retirement Plan ("the transaction").

The LT moved to transfer sponsorship of the Retirement Plan in order to implement the strategy. The IRS appeared and did not oppose the motion. The Bankruptcy Court granted the motion on October 10, 2007, modifying the Liquidating Plan to permit continuation of the Retirement Plan and completion of the transaction. The transaction was completed on June 6, 2008.

On July 11, 2008, debtors filed a Form 5330 with the IRS reporting zero dollars of excise tax liability related to the transaction. On September 15, 2008, the debtors filed Form 1120-C, reporting an income tax liability of $385,693 resulting from the income generated by the transaction. Debtors also filed requests for prompt determination with the IRS as to these reported tax liabilities. The IRS has not responded to the requests for prompt determinations or objected to the reported liabilities.

The LT moved for a determination that the bankruptcy estate incurred no excise tax liability as a result of the transaction. The Bankruptcy Court issued its decision on the limited issue of standing and jurisdiction on August 14, 2009.

First the Bankruptcy Court found that the LT had standing pursuant to 11 U.S.C. § 505 (hereinafter "Code § _) to file the motion, as was granted to him in the Liquidating Plan. Next the court found that the United States' sovereign immunity was abrogated with regard to the pending issue. The court then found that in the circumstances presented the issue must be determinable under Code § 505 or the Declaratory Judgment Act, 28 U.S.C. § 2201, would bar its consideration. Next the court found that because the potential tax liability for which the LT sought a determination arose after confirmation of the Plan, subject matter jurisdiction pursuant to Code § 505(a) was lacking. The Bankruptcy Court stated: "The Court does not believe that Congress intended that Code § 505 be used to determine tax liability arising after confirmation under these circumstances." Order 8-14-09 at 13 (Doc. No. 2-26). Finally, given its determination that jurisdiction was lacking pursuant to Code § 505(a), the Bankruptcy Court found it was also without jurisdiction to make any determination pursuant to Code § 505(b).

## III. STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and *de novo* review to conclusions of law. In re Manville Forest Prods. Corp., 209 F.3d 125, 128 (2d Cir. 2000); In re Petition of Bd. of Directors of Hopewell Int'l Ins. Ltd., 275 B.R. 699, 703 (Bankr. S.D.N.Y. 2002); Fed. R. Bankr. P. 8013.

The facts as set forth above are not disputed. The sole issue on this appeal is whether the Bankruptcy Court's conclusion of law regarding its jurisdiction to rule on the LT's motion brought pursuant to 11 U.S.C. § 505 was in error. Accordingly, *de novo* review will be undertaken.

## III. DISCUSSION

The Declaratory Judgment Act prohibits entry of a declaratory judgment regarding federal tax matters except those brought pursuant to "section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11." 28 U.S.C. § 2201(a). A declaratory judgment may be issued only "[i]n a case of actual controversy." Id. At issue here is whether the LT's motion fell under section 505 of title 11, thus allowing the Bankruptcy Court to enter a declaration as to the Liquidating Trust's liability for excise tax relating to the Retirement Plan transaction.

The general rule in the Second Circuit is that the "bankruptcy court's jurisdiction extends until the debtor's plan of reorganization has been confirmed." ICCO Design/Build, Inc. v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.), 284 B.R. 336, 330-40 (N.D.N.Y. 2002) (citing In re Johns-Manville Corp., 7 F.3d 32, 34 (2d Cir. 1993)). However, it is also the rule in the Second Circuit that the "'bankruptcy court retains post-confirmation jurisdiction only to the extent provided in the plan of reorganization.'" Id. at 340 (quoting In re Johns-Manville Corp., 7 F.3d at 34). Thus, the proper method for determining whether the bankruptcy court has retained post-confirmation jurisdiction is to review the terms of the confirmed plan. Id. If the Bankruptcy Court retained post-confirmation jurisdiction to make a determination under Code § 505(a), then it would be permitted by the Declaratory Judgment Act to make a declaration pertaining to the Liquidating Trust's federal tax liability.

The Liquidating Plan specifically provided authority for the LT to request an expedited determination of taxes "under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust." Plan § 7.01(f). It was pursuant to this authority that the LT submitted

the Form 5330, reflecting an excise tax liability of zero resulting from the Retirement Plan transaction, to the IRS.

Further, the Liquidating Plan provided that the Bankruptcy Court would retain jurisdiction over all matters arising from or relating to the bankruptcy cases.  Plan Art. XIII(q). The Liquidating Plan specifically states that jurisdiction is retained by the Bankruptcy Court to make determinations, inter alia, under Code § 505 with respect to any tax including tax liability that arose in the course of liquidating the assets of the Liquidating Trust, "for all taxable periods throughout the termination of the Liquidating Trust." Id.  The LT sought a determination of the estate's excise tax liability, which arose post-confirmation pursuant to an amended Liquidating Plan ordered by the Bankruptcy Court, pursuant to Code § 505(a). The tax liability at issue certainly was a matter arising from or relating to the bankruptcy cases. It arose during a taxable period while the LT was in the process of terminating the Liquidating Trust by liquidating its assets, a period during which the Liquidating Plan reserved to the Bankruptcy Court jurisdiction to hear such matters.  Moreover, the Bankruptcy Court was permitted, with certain exceptions not applicable here, to determine "the amount or legality of any tax . . . whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." Code § 505(a).  The LT properly brought his motion pursuant to Code § 505(a) for a determination as to the amount of excise tax owed.  It was error to conclude that no jurisdiction existed under Code § 505.

Thus, the Bankruptcy Court had jurisdiction under Code § 505(a) to determine the tax issue that arose post-confirmation, therefore falling within the exception to the prohibition on deciding tax matters set forth in the Declaratory Judgment Act.  See 28 U.S.C. § 2201.

Further, because the tax arose while the Liquidating Plan was being administered, and the Liquidating Plan provided that the Bankruptcy Court retained post-confirmation jurisdiction over such issues, an actual controversy was presented, as required by the Declaratory Judgment Act. The Bankruptcy Court was not prohibited from providing the relief sought by the LT.

In re UAL Corp., 336 B.R. 370 (Bankr. N.D. Ill. 2006) does not support a finding to the contrary. The UALCorp. Court held Code § 505 did not allow determination of the tax consequences of a _proposed_ reorganization plan. Id. at 371. At issue in this case is determination of the tax liability of a _confirmed_ plan, not a proposed plan. In fact, here the Bankruptcy Court ordered amendment of the confirmed plan so that the Retirement Plan transaction could take place. Further, it was only after the Retirement Plan transaction was completed, the Form 5330 was filed with the IRS, and the IRS failed to respond to the Request for Prompt Determination for more than ninety days[4] that the LT sought a determination by motion before the Bankruptcy Court. The completed transaction caused the Liquidating Trust to actually incur a tax liability, whether it was zero or some other amount. In contrast, in UAL Corp. no tax liability had been incurred--the court was being asked to decide a tax liability _if_ the plan was eventually confirmed and _if_ the transaction contemplated by the proposed plan occurred. In other words, the issue in UAL Corp. was future tax consequences, while the issue here was actual tax consequences. Section 505 of the Code clearly encompasses determination of tax consequences actually incurred.

---

[4] The Bankruptcy Court noted that the IRS still had not responded as of the hearing date of the LT's motion, May 26, 2009.

Similarly, Allis-Chalmers Corp. v. Goldberg (In re Hartman Material Handling Sys., Inc.), 141 B.R. 802 (Bankr. S.D.N.Y. 1992), does not compel a contrary finding. In Allis Chalmers the former debtor, Allis-Chalmers ("A-C") brought an adversary proceeding, and moved for summary judgment, seeking declaratory relief as to the potential for the IRS to disallow net operating losses ("NOLs") to reduce future tax liability. Id. at 805. A-C's plan had been confirmed without appeal. Id. On December 2, 1988, the plan was consummated. Thus, the relief sought was not only post-confirmation, but it was also post-emergent from the bankruptcy. Id. In this case, although the declaratory relief was sought post-confirmation, it was sought during the administration of the Liquidating Plan pursuant to an amended confirmation plan.

Further, in Allis-Chalmers the relief sought was to prevent the IRS from disallowing any claimed NOLs. Id. at 806-07. A-C had not yet attempted to use NOLs to reduce its tax liability, but was merely seeking to prevent disallowance should it do so in the future. See id. at 812 (stating that "under the circumstances presented here, it would be improper for this Court to determine in advance the post-confirmation NOL tax rights of a former debtor who has not yet attempted to use its NOLs"). In contrast, here, as previously noted, the LT sought a declaration pertaining to a tax liability already incurred.

The Allis-Chalmers Court also found that "no preconfirmation finding can finally determine tax issues which do not arise until after confirmation[5]." Id. at 813. That is, a determination made while devising a reorganization plan is not binding pertaining to tax issues that arise after the plan is confirmed and consummated. See id. at 813-14. Unlike

---

[5] It is again notable that the tax issue in Allis-Chalmers arose not only post-confirmation, but post-consummation. Id. at 805.

Allis-Chalmers, the relief sought here was a consequence of a transaction made in the administration of the reorganization plan pursuant to an amendment of the plan ordered by the court to determine, not future tax issues, but tax issues that arose directly from the LT carrying out the confirmed plan.

It is also apt to point out that in Allis-Chalmers the former debtor was seeking the relief. Id. at 805. Here the LT sought relief from the Bankruptcy Court on behalf of the Liquidating Trust pertaining to a tax liability incurred in the course of the liquidation. The Liquidation Plan provided for liquidation of the entire estate, with no debtors emerging intact.

Finally, the Allis-Chalmers Court acknowledged that a bankruptcy court may retain jurisdiction in matters arising post-confirmation as provided for in the plan. Id. at 810 & n.12-13. As previously discussed, the Liquidating Plan in this case specifically provided that the Bankruptcy Court would retain jurisdiction to hear matters arising under Code § 505, among others. See In re Johns-Manville Corp., 7 F.3d at 34; In re PT-1 Commun., Inc., 403 B.R. 250, 268 (E.D.N.Y. 2009); Sunbrite Cleaners, Inc., 284 B.R. at 330-40.

## IV. **CONCLUSION**

The Bankrupcy Court retained jurisdiction over this post-confirmation matter pursuant to the Liquidating Plan. Additionally, the tax issue arose during administration of the Liquidating Plan, fulfilling the actual controversy requirement of the Declaratory Judgment Act. Consequently, the Bankruptcy Court has jurisdiction to make the determinations sought by the LT.

Accordingly, it is

ORDERED that August 14, 2009, Order of the Bankruptcy Court is REVERSED and this matter is REMANDED for further proceedings consistent with this Decision.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 8, 2011
       Utica, New York.