UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
In re AGWAY, INC.,

                               Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

D. CLARK OGLE, Liquidating Trustee of the
Agway Liquidating Trust,

                              Appellant,

        -v-                                                        6:09-CV-1049

INTERNAL REVENUE SERVICE,

                               Appellee.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| MENTER, RUDIN & TRIVELPIECE, P.C.<br>Attorneys for Appellant<br>308 Maltbie Street, Suite 200<br>Syracuse, NY 13204-1498 | JEFFREY A. DOVE, ESQ. |
| UNITED STATES DEPARTMENT OF JUSTICE<br>TAX DIVISION, Attorneys for Appellee<br>P.O. Box 55<br>Ben Franklin Station<br>Washington, DC 20044 | KAREN WOZNIAK, ESQ. |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>Northern District of New York<br>100 South Clinton Street<br>P.O. Box 7198<br>Syracuse, NY 13261 | WILLIAM F. LARKIN, ESQ.<br>Assistant United States Attorney |

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

On March 8, 2011, the United States Bankruptcy Court for the Northern District of New York ("the Bankruptcy Court"), Honorable Diane Davis, United States Bankruptcy Judge, denied the Liquidating Trustee's ("the LT") motion to determine tax liability seeking an order pursuant to 11 U.S.C. § 505(a) declaring that excise and income taxes reported by Agway, Inc. and several of its subsidiaries (collectively, "the debtors") were accurate, and pursuant to 11 U.S.C. § 505(b) that the LT, the debtors, and the Agway Liquidating Trust ("Liquidating Trust") be discharged from liability for such taxes. In re Agway, Inc., 412 B.R. 32 (Bankr. N.D.N.Y. 2009), rev'd sub nom. Ogle v. Internal Revenue Serv. (In re Agway, Inc.), 447 B.R. 91 (N.D.N.Y. 2011).

The LT appealed, and the Bankruptcy Court's decision was reversed. The United States ("the government") moved for rehearing pursuant to Bankruptcy Rule 8015. The motion was taken on submission without oral argument.

**II. FACTS**

On October 1, 2002, the debtors filed for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code ("the Code"). The debtors' Plan of Liquidation (the "Plan") was confirmed on April 28, 2004, and became effective May 1, 2004. D. Clark Ogle was appointed as the LT. The LT set aside $5,000,000 to be used for any tax liability the Liquidating Trust should incur.

The Plan provided that the LT "may request an expedited determination of taxes of the Liquidating Trust . . . under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trusts for all taxable periods through dissolution of the

Liquidating Trust."  Plan, § 7.01(f).[1]  The Plan further provided that the Bankruptcy Court would maintain jurisdiction to determine matters under § 505 for all taxable periods through the termination of the Liquidating Trust.  Plan, Art. XIII(q).

Although the debtors' Retirement Plan was to be terminated May 31, 2004, a strategy was devised to preserve the Retirement Plan where sponsorship was to be transferred to an independent company allowing for continuation of the Retirement Plan (the "transaction").  The LT moved to transfer sponsorship of the Retirement Plan without opposition.  On October 1, 2007, the Bankruptcy Court granted the motion, and the transaction was completed on June 6, 2008.  On July 11, 2008, the debtors filed a Form 5330 with the Internal Revenue Service ("IRS"), reporting zero dollars of excise tax liability related to the transaction.  On September 15, 2008, the debtors filed a Form 1120-C with the IRS, reporting an income tax liability of $385,693 resulting from the transaction.  The LT requested an expedited determination regarding the reported tax liabilities by the IRS, however, the IRS did not respond to the request or object to the reports.  The LT filed a motion to determine tax liability with the Bankruptcy Court pursuant to 11 U.S.C. § 505.[2]  The Bankruptcy Court held that because the IRS had not expressed any disagreement with the reported tax liabilities there was no actual controversy over which it had subject matter

---

[1]  Bankr. Case No. 02-65872 (lead case) through 01-65877, jointly administered, Doc. No. 5035.

[2]  "[T]he [bankruptcy] court may determine the amount or legality of any tax . . . whether or not previously assessed . . . and whether or not contested before or adjudicated by a judicial or administrative tribunal."  11 U.S.C. § 505(a)(1) (2006).  It should be noted that courts have interpreted "the verb 'may' in 11 U.S.C. § 505(a)(1) as vesting the bankruptcy court with discretionary authority to redetermine a debtor's taxes."  New Haven Projects Ltd. Liab. Co. v. City of New Haven (In re New Haven Projects Ltd. Liab. Co.), 225 F.3d 283, 288 (2d Cir. 2000).

jurisdiction to determine tax liability for the debtors. In re Agway, Inc., 412 B.R. 32 (Bankr. N.D.N.Y. 2009). The Bankruptcy Court denied the LT's motion. Id.

Following the decision, the LT appealed. On March 8, 2011, the Bankruptcy Court's decision was reversed. Ogle, 447 B.R. at 96. Because the IRS did not cross-appeal, its arguments regarding Article III case or controversy, lack of controversy under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and exceeding the government's waiver of sovereign immunity were not addressed in the March 8, 2011, decision. Id. at 92 n. 2. The government then filed this motion for a rehearing regarding those issues.

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Bankruptcy Procedure 8015 allows parties to file a motion for rehearing within fourteen days after the judgment by the district court or bankruptcy appellate panel. Rule 8015, however, does not provide the standard for evaluating a motion for rehearing. Fed. R. Bankr. P. 8015 (2006). Because the rule is derived from Federal Rule of Appellate Procedure 40(a), one may look to that rule for guidance.[3] In re BuddyUSA, Inc., 2010 WL 1539720, at *1. Rule 40(a) states in relevant part, "[t]he petition [for rehearing] must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." Fed. R. App. P. 40(a)(2) (2006). "The function of a petition for rehearing is not to permit the petitioner to

---

[3] The LT argues that the standard that should be used to determine this motion is the Federal Rule of Appellate Procedure 59(e) standard for "manifest errors of law or fact or . . . newly discovered evidence." However, "courts in this circuit have incorporated the standard set forth in Federal Rule of Appellate Procedure 40(a) . . . ." In re BuddyUSA, Inc., Nos. 03-CV-1038, 03-CV-1039, 2010 WL 1539720, at *1 (N.D.N.Y. Apr. 19, 2010) (Kahn, J.). Accordingly, the government will be held to the standard set forth in Rule 40(a), and not to the standard set forth in Rule 59(e).

reargue his case." New York v. Sokol, No. 94-CV-7392, 1996 WL 428381, at *4 (S.D.N.Y. July 31, 1996). Rather, a petition for rehearing should direct attention to some material matter of law or fact which had been overlooked. Id.

### B. Cross-Appeal

The government argues that it was not required to file a cross-appeal, as was suggested in the March 8, 2011, opinion, when simply urging the appellate court to affirm. See Ogle, 447 B.R. at 92 n. 2.

An "appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although [such] argument may involve . . . an insistence upon matter[s] overlooked or ignored . . . ." United States v. Am. Ry. Exp. Co., 265 U.S. 425, 435, 44 S. Ct. 560, 546 (1924); see also Blum v. Bacon, 457 U.S. 132, 138, 102 S. Ct. 2355, 2359 (1982) ("[W]ithout filing a cross-appeal . . . an appellee may rely upon any matter appearing in the record in support of the judgment below."); Cal. v. Grace Bretheren Church, 457 U.S. 393, 404, 102 S. Ct. 2498, 2505 (1982) ("[A]n appellee, without filing a cross appeal, may defend a judgment on any ground that the law and record permit and that would not expand the relief he has been granted.").

Federal Rule of Bankruptcy Procedure 8006, however, provides the following:

> Within 14 days after the service of the appellant's statement the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal and, if the appellee has filed a cross appeal, the appellee as cross appellant shall file and serve a statement of the issues to be presented on the cross appeal and a designation of additional items to be included in the record.

Fed. R. Bankr. P. 8006. If an issue is not listed in the statement of issues to be presented on appeal pursuant to Rule 8006, then that issue is waived. In re GGM, P.C., 165 F.3d 1026, 1032 (5th Cir. 1999).

It is worth noting that Rule 8006 refers to issues, whereas case law that the government relies on refers to arguments. Federal Rule of Appellate Procedure 28(a) requires appellants' briefs to include a table of contents and authorities, a statement of jurisdiction, a statement of issues, a statement of the case, a summary of argument, an argument, and a conclusion. The same is true for a cross-appeal, with the exception that a statement of the case is not necessary. Fed. R. App. P. 28(h). An argument section must include "the contentions of the appellant on the issues presented, and the reasons therefor." Fed. R. App. P. 28(a)(6). Issues not sufficiently argued are deemed waived, and are not considered on cross-appeal. See United States v. Maniktala, 934 F.2d 25, 27 (2d Cir. 1991).

Although the Bankruptcy Court addressed the Article III, DJA, and sovereign immunity issues in its decision, the government did not cross-appeal regarding the issues. Merely incorporating an argument made to the Bankruptcy Court does not preserve a question for appellate review.

Accordingly, these issues were not preserved as issues on appeal. As outlined below, even had the issues regarding case or controversy, actual controversy, and sovereign immunity been reconsidered, it would have made no difference in the outcome.

**C. Case or Controversy**

The government asserts that there was no case or controversy as required under Article III of the Constitution and there was no "actual controversy" as required by the DJA, and consequently, the Bankruptcy Court did not have jurisdiction to decide the LT's motion to

determine tax liability. The LT argues that there is an exception in the DJA for Federal tax proceedings brought under 11 U.S.C. § 505, but the government alleges the exception applies only for § 505(b). The government also claims that because the IRS did not express any disagreement with the liabilities reported by the debtors no actual case or controversy existed, and because no case or controversy existed, the Bankruptcy Court lacked jurisdiction over the motion to determine tax liability. The LT argues that because the taxes resulted from a transaction that had already taken place, an actual controversy existed. Furthermore, the LT argues that the Bankruptcy Court had jurisdiction to issue a declaratory judgment pursuant to the 11 U.S.C. § 505 exception to the DJA.

The judicial power of federal courts is limited to cases or controversies. U.S. Const. art. III, § 2, cl. 1. The DJA includes "the case or controversy limitation on federal jurisdiction found in Article III of the Constitution." Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F. 3d 747, 752 (2d Cir. 1996). The DJA permits declaratory relief only in cases presenting "actual controvers[ies]." 28 U.S.C. § 2201. The "actual controversy" requirement in the DJA is the same as the Article III case or controversy requirement. See, e.g., Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239–40, 57 S. Ct. 461, 463 (1937). The DJA, however, provides an exception, which permits a federal court to issue a declaratory judgment in matters of federal taxes with respect to "a proceeding under section 505 . . . of title 11." 28 U.S.C. § 2201(a). The language of the DJA does not limit its application to either § 505(a) or to § 505(b).

In Sterling Consulting Corp. v. U.S., a receiver's request for a determination of taxes under 11 U.S.C. § 505 was denied. 245 F.3d 1161, 1166 (10th Cir. 2001). In that case, the government claimed that the district court in Colorado lacked jurisdiction to

determine tax liabilities of debtors who were in bankruptcy in Massachusetts. Id. The Tenth Circuit stated that the request was not related to a bankruptcy proceeding under Title 11 in federal district court because there was no such proceeding in the district court. Id. Thus, the district court did not have jurisdiction.

Sterling is clearly distinguishable from the case at hand. In Sterling, the § 505 exception did not apply because the federal proceeding was a receivership proceeding and not a bankruptcy proceeding. Id. In this case, the LT originally filed his motion in the bankruptcy court as part of an ongoing bankruptcy case. In re Agway Inc., 412 B.R. at 35. Therefore, the case at hand is a bankruptcy proceeding, and the § 505 exception applies.

Conversely to Sterling, Kilen v. United States (In re Kilen), is analogous to this case. 129 B.R. 538 (Bankr. N.D. Ill. 1991). In Kilen, the trustee was faced with potential personal liability, compromising his "fresh start" from bankruptcy, if the IRS asserted he owed taxes after money Kilen had set aside to pay the IRS was distributed to unsecured creditors. Id. at 540. Kilen had set aside $640,000 for potential tax liability. Id. The government argued that because the IRS had never attacked and may never attack or address Kilen's tax forms there was no actual controversy as required by the DJA. Id. at 541. The court held that there was no foundation for the government's assertion that § 505 limited a bankruptcy court's powers to determine tax debts.

Here, the LT has set aside $5,000,000 to be used for potential tax liability. As in Kilen, there is the possibility here that the money the LT has set aside for excise tax liability could be distributed to unsecured creditors. Should that money be distributed to the debtors' unsecured creditors, there would be no funds available to satisfy any additional tax liability the IRS may determine. The DJA exception for § 505 applies here. Additionally, the

Bankruptcy Court retained jurisdiction over the post-confirmation tax matter pursuant to the Liquidating Plan. In re Agway, Inc., 477 B.R. at 94.

Accordingly, a case or controversy exists, the Bankruptcy Court had jurisdiction to decide the LT's motion to determine tax liability.

### D. Sovereign Immunity

The government asserts that a bankruptcy plan cannot expand the court's jurisdiction beyond the United States' waiver of sovereign immunity. The LT argues that the government's failure to appeal the bankruptcy court's determination that sovereign immunity was abrogated is res judicata, and also that sovereign immunity was waived pursuant to 11 U.S.C. § 106 and by the proofs of claim the government filed.[4]

The sovereign immunity of the United States may only be waived by Federal statute. Presidential Garden Assocs. v. United States, 175 F.3d 132, 139 (2d Cir. 1999). Sovereign immunity is abrogated as to a governmental unit with respect to § 505. 11 U.S.C. § 106(a). "The [bankruptcy] court may hear and determine any issue arising with respect to the application of [section 505] to governmental units." 11 U.S.C. § 106(a)(2). It can also "rule on the merits of tax claims involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax of the debtor or estate." 11 U.S.C. § 505.

Here, however, the government focuses its argument regarding sovereign immunity on 11 U.S.C. § 1141(a) and argues that section 1141(a) only binds the United States with

---

[4] The LT argues, pursuant to 11 U.S.C. § 106(b), that the government waived sovereign immunity when it filed proofs of claim. The LT claims that the government filed six proofs of claim, and therefore waived sovereign immunity with respect to a claim against it. The record does not include these proofs of claim, and thus, it cannot be determined whether the government waived sovereign immunity in filing them.

- 9 -

respect to pre-confirmation claims. The government fails to address the fact that § 1141 is merely one of the many Code sections which abrogates sovereign immunity under § 106. 11 U.S.C. § 106(a). Section 1141 is not at issue here. Rather, the pertinent section of the Code for purposes here is 11 U.S.C. § 505. Because § 505 is one of the enumerated Code sections in § 106, the bankruptcy court had the jurisdiction to hear and determine issues arising from § 505 with respect to the IRS.

Accordingly, the Bankruptcy Court had jurisdiction as sovereign immunity is abrogated with respect to the LT's § 505 claims under 11 U.S.C. § 106.

## IV.  CONCLUSION

Pursuant to Rule 8006 the government's motion for a rehearing pursuant to Rule 8015 must be denied. The government did not cross-appeal, and did not produce a statement of issues to be argued. Therefore, the government is not entitled to a rehearing. Regardless, a rehearing would not have produced different results in this case, as a case or controversy exists pursuant to Article III of the Constitution and the DJA, and sovereign immunity is abrogated pursuant to 11 U.S.C. § 106(a).

Accordingly, it is

ORDERED that

1. The motion for rehearing pursuant to Bankruptcy Rule 8015 is DENIED; and

2. This matter is REMANDED to the Bankruptcy Court for further proceedings consistent with this decision.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 5, 2011
       Utica, New York.